IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ERIC ELLIS, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | No. 3:25-CV-867-N-BW |
| | § | |
| CITY OF DALLAS, et al., | § | |
|     Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendant City of Dallas's (the "City") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, filed on December 5, 2025 (Dkt. No. 44) and Defendants Dalton Harvey's and Jonathan Wellman's (the "Officers") Motion to Dismiss pursuant to Rule 12(b)(6), filed on October 26, 2025 (Dkt. No. 29). This case was automatically referred to the undersigned magistrate judge for case management pursuant to Special Order 3-251. (*See* Dkt. No. 2.)

Upon careful review of the complaint, the parties' briefing, and the relevant case law, the undersigned **RECOMMENDS** that the City's motion to dismiss (Dkt. No. 44) be **GRANTED**, and the Officers' motion to dismiss (Dkt. No. 29) be **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

**A.    Procedural Background.**

Ellis, proceeding pro se, filed this action in the 191st Judicial District Court of Dallas County, Texas on January 13, 2025, naming as Defendants the City and three individual police officers, one of whom is identified only as "John Doe." (*See* Dkt. No. 1-5 ("Pet.").)    Ellis amended his state court petition on April 1, 2025. (*See* Dkt. No. 1-15.)  The City timely removed to this Court on April 8, 2025, based federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. (*See* Dkt. No. 1.)  At the time of removal, the City was the only defendant who had been served and appeared. (*See id.* at ¶ 11; *see also* Dkt. 1-4.)

On October 1, 2025, Ellis was granted leave to file a Second Amended Complaint (*see* Dkt. Nos. 17, 18), after which summonses were issued to Defendants Harvey and Wellman (Dkt. No. 19) and returned executed on October 9, 2025  (Dkt. Nos. 23, 24).

On October 26, 2025, the Officers filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and on qualified immunity grounds (Dkt. No. 29 ("Officers Mot.")).  Ellis filed a response on the same day (Dkt. No. 30 ("Officers Resp.")), and the Officers filed a reply on November 10, 2025 (Dkt. No. 33 ("Officers Reply")).  On the same date, Ellis filed, without leave of court, a sur-reply. (Dkt. No. 34.)  A sur-reply is not authorized as a

matter of right under the Court's local rules. *See* N.D. Tex. Civ. R. 7.1 (providing for motion, response, and reply). "Whether to allow filing a surreply is within the sound discretion of the court, subject to review for abuse of discretion." *Goodson v. Nasco Healthcare Inc.*, No. 3:21-CV-1467-N, 2025 WL 2322793, at *4 (N.D. Tex. Aug. 12, 2025) (internal quotation marks omitted). Ellis did not seek leave to file the sur-reply, and the undersigned does not find grounds to allow him to file a sur-reply. The undersigned therefore has not considered the unauthorized sur-reply in making these findings, conclusions, and recommendation.

On December 5, 2025, the City filed a motion to dismiss pursuant to Rule 12(b)(6) (Dkt. No. 44 ("City Mot.")), to which Ellis filed a response on the same day (Dkt. No. 45 ("City Resp.")), and the City filed a reply on December 19, 2026 (Dkt. No. 46 ("City Reply")). Ellis again filed an unauthorized sur-reply (Dkt. No. 47), which likewise will not be considered in making these findings, conclusions, and recommendation.

Accordingly, both motions (Dkt. Nos. 29, 44) are ripe for review, and Ellis's Second Amended Complaint (Dkt. No. 18 ("Compl.")) remains the operative complaint.

## B.    Factual Background.

The following facts are taken from Ellis's Second Amended Complaint and are accepted as true for purposes of deciding the present motions to dismiss. Ellis

alleges that that on January 11, 2025, Officer Wellman initiated a traffic stop.  Ellis

alleges he "immediately oblige[d] as he pulled over and parked in [a] private parking

lot."  (Compl. ¶¶ 12-14.)  Officer Wellman ordered Ellis from the car and then

purportedly "physically search[ed] and frisk[ed]" him "for weapons without

reasonable suspicion or probable cause."  (*Id*. ¶ 16.)  Officer Wellman then issued

Ellis citations for alleged offenses of the Texas Transportation Code.  (*Id*. ¶ 17.)  Ellis

claims that after he received these citations, "the detainment by Defendant Officers

was prolonged unreasonably as the Defendant Officers decided to tow" his vehicle.

(*Id*. ¶ 18.)  He claims that the "entire traffic stop lasted over 1 hour."  (*Id*. ¶ 19.)

During the wait for the tow truck, Ellis alleges that Officer Wellman searched

his "vehicle for drugs and weapons" without reasonable suspicion.  (*Id*. ¶ 20.)  He

also claims that his vehicle was not lawfully towed, "making the alleged inventory

search illegal."  (*Id*. ¶ 22.)  His vehicle was then towed, which required Ellis to take

steps to retrieve the car.  (*Id*.  ¶¶ 23-37.)  He alleges that the damages to his vehicle

"were extensive."  (*Id*. ¶ 38.)

Ellis claims that his vehicle was towed pursuant to the City's "Uninsured

Motorist Ordinance Section 28-4 of the Dallas City Code," which he contends is

impermissibly "not aligned with the Texas Transportation Code" and the

Constitution.   (*Id*. ¶¶ 39-46.)  He alleges that the ordinance "allowed it [sic] police

officers to impound vehicles without a warrant," which conflicts with the Fourth and Fourteenth Amendments.  (*Id*. ¶ 47.)

Ellis incorporated into his complaint several links to video footage uploaded to YouTube that allegedly captured the incident.  (*Id*. ¶ 103, a through e.)  The video links will be cited herein as "Ex. A," "Ex B," and so on, along with the hyperlinks provided by Ellis.  Ellis asserts the following eight causes of action in his complaint:

1. Pursuant to 42 U.S.C. § 1983, Ellis alleges that the Officers unlawfully detained him for an unreasonable amount of time.  (Compl. ¶¶ 50-55.)

2. Pursuant to 42 U.S.C. § 1983, Ellis alleges that Officer Wellman conducted an unlawful search of his vehicle.  (*Id*. ¶¶ 56-59.)

3. Pursuant to 42 U.S.C. § 1983, Ellis alleges that the Officers caused his vehicle to be unlawfully towed.  (*Id*. ¶¶ 50-65.)

4. Pursuant to 42 U.S.C. § 1983, Ellis alleges that the Officers violated his substantive due process rights by "unwarranted state interference in Plaintiff's creative content relationship with his friends that resides [sic] in Dallas."  (*Id*. ¶¶ 66-75.)

5. Pursuant to 42 U.S.C. § 1983, Ellis alleges that the City maintained unconstitutional policies of inadequate training and supervision, as well as ratifying the acts of the Officers.[1]  (*Id*. ¶¶ 76-82.)

6. Pursuant to 42 U.S.C. § 1983, Ellis alleges that the Officers and the City failed to train regarding the stop, search, and towing.  (*Id*. ¶¶ 83-91.)

---

[1] Ellis mistakenly labeled his fifth cause of action "fourth" and subsequently misnumbered his following causes of action.  (*See id*. ¶¶ 76-101.)  To the extent the undersigned finds it necessary to reference Ellis's causes of action, they will be referenced by their correct number.

7. Pursuant to Texas Penal Code section 20.02 and 42 U.S.C. § 1983, Ellis alleges that all Defendants unlawfully detained him and towed his car. (*Id.* ¶¶ 92-97.)

8. Pursuant to section 101.021 of the Texas Civil Practice and Remedies Code, Plaintiff alleges all Defendants are liable for failure to adequately assess the need to detain Plaintiff, and failure to train and supervise. (*Id.* ¶¶ 98-101.)

## II. LEGAL STANDARDS

### A.    12(b)(6) Motion to Dismiss

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise a right to

relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* And "[a] claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, Fed. R. Civ. P. 8(a)(2)))).

Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, but it does require that a plaintiff allege more than labels and conclusions. And, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

"Pro se complaints receive a 'liberal construction.'  Even so, 'mere conclusory allegations on a critical issue are insufficient.'" *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018); *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)).  And "liberal construction does not require that the Court . . . create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-CV-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013).  The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff.  *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).  At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success.  It only determines whether the plaintiff has stated a claim upon which relief can be granted.  *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings.  *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to [his] claim[s]." *Collins*, 224 F.3d at 498-99 (quotations omitted); *accord Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir.2003).  Attachments falling under these categories

may be properly considered without converting the motion to dismiss into a motion for summary judgment. *See Benchmark Electronics*, 343 F.3d at 725.

As noted above, Ellis incorporated links to video footage in his complaint. (*See* Compl. ¶ 103.) "The Fifth Circuit, in *Harmon v. City of Arlington*, note[d] that video footage is central to a Plaintiff's claims when the footage depicts the events alleged." *Butler v. Scott-Lee*, No. 3:24-CV-1060-L-BW, 2025 WL 3286391, at *2 (N.D. Tex. Aug. 13, 2025), *adopted*, 2025 WL 3284301 (N.D. Tex. Nov. 25, 2025) (citing *Goodale v. Seguin*, No. SA-22-CV-00031-XR, 2022 WL 17084400, at *3 (W.D. Tex. Nov. 17, 2022) (citing *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1164 (5th Cir. 2021))). Accordingly, the undersigned concludes that the Court may consider the video recordings in recommending resolution of the motions to dismiss. *See Sligh v. City of Conroe, Tex.*, 87 F.4th 290, 298 (5th Cir. 2023) (considering a video attached to defendants' joint motion to dismiss and referenced in plaintiff's complaint). "[W]here video recordings are included in the pleadings . . . the video depictions of events, viewed in the light most favorable to the plaintiff, should be adopted over the factual allegations in the complaint if the video 'blatantly contradict[s]' those allegations." *Harmon*, 16 F.4th at 1163; *see also Sligh.*, 87 F.4th at 298 ("[T]o the extent that the [videos] contradict[ ] [plaintiff's] allegations, the [videos] control.")

**B.      Section 1983 and Qualified Immunity**

Under 42 U.S.C. § 1983, private citizens may sue public officials for violations of their federal statutory or constitutional rights. *See Monroe v. Pape*, 365 U.S. 167, 171 (1961). To state a claim under § 1983, a plaintiff must show a government official, acting under color of state law, "deprive[d] him 'of any rights, privileges, or immunities secured by the Constitution.'" *Morgan v. Chapman*, 969 F.3d 238, 245 (5th Cir. 2020). Section 1983 does not create any substantive rights; it simply provides a remedy for certain designated rights, so "an underlying constitutional or statutory violation is a predicate to liability." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997).

Section 1983, however, shields public officials from civil liability under the doctrine of qualified immunity "so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *see also Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995). "[T]he immunity issue must be resolved at the earliest possible stage of the litigation since it entails an entitlement to immunity from suit and not merely a defense to liability." *Gibson*, 44 F.3d at 277 (citing *Hunter v. Bryant*, 502 U.S. 224, 226 (1991)). Since the motion to dismiss stage is the earliest possible stage of litigation, the issue

of qualified immunity must be decided then if properly raised.  *See Carswell v. Camp*,
37 F.4th 1062, 1067-68 (5th Cir. 2022).

"To decide whether [a] defendant[ ] [is] entitled to qualified immunity, the
court must first answer the threshold question whether, taken in the light most
favorable to plaintiff[ ] as the part[y] asserting the injuries, the facts [he has] alleged
show that defendant['s] conduct violated a constitutional right."  *Ellis v. Crawford*,
No. CIV.A. 3:03CV2416D, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (citing
*Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified
immunity issue must consider, then, this threshold question: Taken in the light most
favorable to the party asserting the injury, do the facts alleged show the officer's
conduct violated a constitutional right?  This must be the initial inquiry.")).  "If no
constitutional right would have been violated were the allegations established, there
is no necessity for further inquiries concerning qualified immunity."  *Saucier*, 533
U.S. at 201.  "[I]f a violation could be made out on a favorable view of the parties'
submissions, the next, sequential step is to ask whether the right was clearly
established."  *Id*.

> To be "'clearly established,' the contours of the right must be
> sufficiently clear that a reasonable official would understand that what
> he is doing violates the right."  *Anderson v. Creighton*, 483 U.S. 635
> (1987).  "Clearly established" means that, at the time of the officer's
> conduct, the law was sufficiently clear that every reasonable official
> would understand that what he is doing is unlawful. In other words,
> existing law must have placed the constitutionality of the officer's

> conduct beyond debate.  This demanding standard protects all but the
> plainly incompetent or those who knowingly violate the law.

*District of Columbia v. Wesby*, 583 U.S. 48, 63, (2018) (internal citations and quotations omitted).

In determining whether a right is clearly established, the Court must consider "[its] own and other relevant precedents."  *Elder v. Holloway*, 510 U.S. 510, 516 (1994) (cleaned up) (quoting *Davis v. Scherer*, 468 U.S. 183, 192 n.9 (1984)); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (holding that defendants' conduct violated clearly established law "in light of binding Eleventh Circuit precedent" without deciding whether Supreme Court precedent also clearly established the principle). "We do not require a case directly on point," *Ashcroft*, 563 U.S. 731 at 741, or one "involving 'fundamentally similar' facts," *Hope*, 536 U.S. at 741 (quoting *United States v. Lanier*, 520 U.S. 259, 263 (1997)), but "existing precedent must have placed the statutory or constitutional question beyond debate," *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).  "The plaintiff has the burden to point out the clearly established law." *Clarkston v. White*, 943 F.3d 988, 993 (5th Cir. 2019) (citing *Delaughter v. Woodall*, 909 F.3d 130, 139 (5th Cir. 2018).

"Both steps in the qualified immunity analysis are questions of law."  *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013).  A good-faith assertion of qualified immunity alters the usual burden of proof, "shifting it to the plaintiff to show that the

defense is not available." *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 287 (5th Cir. 2020). An officer is entitled to qualified immunity "if there is no violation, or if the conduct did not violate law clearly established at the time." *Bailey v. Iles*, No. 22-30509, 2023 WL 8062239 at *2 (5th Cir. Nov. 21, 2023) (unpublished).  Courts have the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

## C.   Municipal Liability

The above general pleading standards also apply to a claim against a municipality.  *See Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) ("There is no heightened pleading standard for [42 U.S.C.] § 1983 claims against municipalities. To survive a motion to dismiss, the complaint need not contain detailed factual allegations but still must state sufficient facts to establish a plausible claim on its face." (citing *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018))).

Because "[a] person may sue a municipality that violates his or her constitutional rights [only] 'under color of any statute, ordinance, regulation, custom, or usage,'" *id*. (quoting Section 1983; citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)), a plaintiff alleging a *Monell* claim "has two burdens: to [plausibly allege] (1) that a constitutional violation occurred and (2) that a municipal

policy was the moving force behind the violation," *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020) (citing *Monell*, 436 U.S. at 694). "In municipal-liability cases," therefore, the threshold question "is whether the complained-of 'act may fairly be said to represent official policy.'" *Id*. at 792-93 (cleaned up; quoting *Monell*, 436 U.S. at 694); *see also Hutcheson*, 994 F.3d at 483 (rejecting the argument that a district court errs by dismissing a *Monell* claim without first analyzing the underlying constitutional violation).

Accordingly, a plaintiff may proceed on a *Monell* claim only by identify[ing] "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (cleaned up). Municipalities are not liable "on the theory of respondeat superior" and are "almost never liable for an isolated unconstitutional act on the part of an employee." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009); *see also Hutcheson*, 994 F.3d at 482; *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 497 & n.11 (5th Cir. 2021) (noting that where a plaintiff's claim fails as to one prong, a court "need not consider whether [his] claim also fails the other two *Monell* prongs" (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168-69 (5th Cir. 2010))).

"Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form

of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting, in turn, *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc))); *see also Brown*, 985 F.3d at 497 ("An 'official policy' may take two forms – either a 'policy statement formally announced by an official policymaker' or a 'persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" (quoting *Zarnow*, 614 F.3d at 168-69)).

"To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Peña*, 879 F.3d at 622 (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997); footnote omitted); *see also Pinedo*, 2015 WL 5021393, at *5 (N.D. Tex. Aug. 25, 2015) ("To establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'" (quoting *Piotrowski*, 237 F.3d at 582)).

## III.  ANALYSIS

### A.    Ellis's Claims Against the Officers

Ellis seeks to hold the Officers liable under 42 U.S.C. § 1983, which makes liable "[e]very person" who, under color of state law, violates federal constitutional rights.  (*See, e.g.*, Compl. ¶¶ 50-101.)  The Fourth Amendment confers the right to be free from "unreasonable searches and seizures[.]"  U.S. Const. amend. IV.  Ellis alleges that the Officers violated his Fourth Amendment right to be free from excessive force and unreasonable searches and seizures and his substantive due process rights, because he was allegedly "physically search[ed] and frisk[ed] [ ] for weapons without reasonable suspicion or probable cause" (Compl ¶ 16); detained for an unreasonable amount of time (*id*. ¶¶ 50-55), had his vehicle searched (*id*. ¶¶ 56-59), and his vehicle towed (*id*. ¶¶ 60-65; 92-97).

The Officers move for dismissal under both general Rule 12(b)(6) standards and based on qualified immunity.  (*See generally* Officers Mot.)  The Officers argue that Ellis's claims fail because he does not allege facts that show any plausible constitutional or state law violations.  (*Id*. at 8-15.)  Additionally, they argue they are entitled to dismissal based on qualified immunity because there was no "clearly established" law at the time of the incident prohibiting the Officers' actions.  (*Id*. at 15.)

"Once a defendant invokes the qualified immunity defense, the plaintiff carries the burden of demonstrating its inapplicability." *Floyd v. City of Kenner*, 351 F. App'x 890, 893 (5th Cir. 2009) (citing *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)). "At [the motion to dismiss] stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" *Pearson v. Gage*, No. 3:22-CV-2597-K, 2023 WL 6149155, at *6 (N.D. Tex. Sept. 19, 2023) (citing *Beherns v. Pelletier*, 516 U.S. 299, 309 (1996).

### 1. Ellis has failed to allege a constitutional violation with respect to his initial stop, his detention, and the seizure and tow of his vehicle.

#### a. The traffic stop was not unconstitutional.

A temporary detention attendant to a traffic stop by police is a "seizure" of the occupants and the vehicle within the meaning of the Fourth Amendment, *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (citation omitted), "even though the purpose of the stop is limited and the resulting detention quite brief," *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). "Courts examine the legality of traffic stops under the two-pronged analysis described in *Terry v. Ohio*, 392 U.S. 1, 19–20, (1968)." *See United States v. Shaw*, No. 3:12-CR-146-D, 2013 WL 66055, at *3 (N.D. Tex. Jan. 7, 2013), *aff'd*, 578 F. App'x 363 (5th Cir. 2014).

In determining the propriety of a traffic stop, "[c]ourts first examine whether the officer's action was justified at its inception, and then inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that

-17-

justified the stop." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir.2004) (citing

*Terry*, 392 U.S. at 19–20); *see also U.S. v. Cooper*, 506 F. App'x 285, 285-86 (5th Cir.

2013) (The court must determine "whether the officer's action was justified at its

inception and whether the search or seizure was reasonably related in scope to the

circumstances that justified the stop in the first place.") (internal citation and

quotation marks omitted). "As a general matter, the decision to stop an automobile

is reasonable where the police have probable cause to believe that a traffic violation

has occurred." *United States v. Miller*, 146 F.3d 274, 277 (5th Cir.1998) (quoting

*Whren v. United States*, 517 U.S. 806, 810 (1996)).

Upon review of the allegations in Ellis's complaint and the relevant case law,

the undersigned concludes that the facts as alleged fail to plausibly state that the basis

for the traffic stop was improper. Furthermore, the video footage incorporated into

Ellis's Complaint (*id.* ¶ 103) contradicts any allegation that the traffic stop was

improper. *See Harmon*, 6 F.4th at 1163. Ellis's vehicle violated numerous Texas

roadway laws, was subject to tow, and there was arguably probable cause to arrest

Ellis himself (although he was not arrested).

Under Texas law, it is illegal to operate a vehicle on a public road "that does

not display two license plates" issued by the appropriate authorities. Tex. Transp.

Code Ann. § 504.943(a); *see Perkins v. Ivey*, 772 F. App'x 245, 246 (5th Cir. 2019)

("Texas law is rather straightforward: 'The owner of a motor vehicle registered in

this state . . . may not operate or permit the operation of the vehicle on a public highway until the owner applies for title and registration of the vehicle; or obtains a receipt evidencing title for registration purposes.'") (citing Tex. Transp. Code § 501.022(a)); *see also Ellis v. City of White Settlement*, No. 4:22-CV-01095-O-BP, 2023 WL 8813890, at *6 (N.D. Tex. Nov. 28, 2023), *adopted*, 2023 WL 8816382 (N.D. Tex. Dec. 20, 2023), *appeal dismissed*, No. 24-10072, 2024 WL 3569220 (5th Cir. Apr. 29, 2024), *aff'd*, No. 24-10072, 2025 WL 342853 (5th Cir. Jan. 30, 2025), *cert. denied*, 145 S. Ct. 2783 (2025) (stating "it is an offense to operate a vehicle without a license plate in Texas")  Violating this statute is a misdemeanor.  *See* Tex. Transp. Code § 504.943(e).

As the videos incorporated into Ellis's complaint demonstrate, Ellis's vehicle had no state registration sticker,[2] had no license plate on the rear of the vehicle,[3] and had no license plate on the front of the vehicle.[4]  Thus, Ellis's own evidence supports a finding that his vehicle violated several provisions of the Texas Transportation Code, and therefore the traffic stop and detention were reasonable.  Additionally, Ellis does not dispute that he was operating his vehicle without license plates.  (*See*

---

[2] Compl. ¶ 103, Ex. D, https://youtu.be/bWQSceHumuY, at 1:03-1:15 and 2:09-2:14 (last visited Apr. 9, 2026).

[3] *Id.*, at 2:50-2:57 (last visited Apr. 9, 2026).

[4] *Id.*, Ex. A, https://www.youtube.com/watch?v=L5qCxaXkKEM, at 6:00 (last visited Apr. 9, 2026).

*generally* Officers Resp.)  Because operating a vehicle without a license plate is a misdemeanor under Texas law, *see* Tex. Transp. Code § 504.943(e), the stop of Ellis's vehicle was justified at its inception.  Therefore, Ellis has not plausibly alleged that the initial stop of his vehicle violated the Fourth Amendment.

### b.    The stop was not unlawfully prolonged.

Under the second prong, the issue is whether the officer's actions "were reasonably related to the circumstances that justified the stop, or to dispelling his reasonable suspicion developed during the stop."  *Brigham*, 382 F.3d at 507.  As to the length of time of his detention, Ellis asserts he was detained for over one hour. (Compl. ¶ 19.)  For the reasons explained below, the undersigned finds that a one-hour detention was not unreasonable under the circumstances.

First, Ellis fails to offer any relevant caselaw to show that a delay of one hour in releasing a detained person is a constitutional violation.  *Compare Ellis*, 2023 WL 8813890, at *8 (dismissing a prior suit where Ellis alleged that he was detained for five hours).  Thus, his one-hour detention was not unconstitutional.  Next, nothing in Ellis's complaint plausibly alleges that the Officers' actions were not reasonably related to the circumstances surrounding the stop.  For example, "the stopping officer may ask any stopee incidental questions provided those questions do not measurably extend the stop's duration."  *El Bey v. Dominguez*, 540 F. Supp. 3d 653, 661 (N.D. Tex. 2020) (internal citations omitted).  Such inquiries typically involve

-20-

(1) asking for the driver's license, registration, and proof of insurance; (2) checking whether outstanding warrants for the driver exist; and (3) asking the driver if he has drugs or weapons in the car and about his travel plans. *See Rodriguez v. United States*, 575 U.S. 348 (2015); *Prouse*, 440 U.S. at 658–60; *United States v. Pack*, 612 F.3d 341 (5th Cir. 2010). Nor does the video evidence provided with the complaint show that the Officers' actions were not reasonably related to the circumstances surrounding the stop. Rather, Ellis's video shows that at least some of the delay occurred when the Officers (and Ellis) waited for the tow truck to arrive.[5] At one point, the Officers advised Ellis that he was free to remove his belongings from the vehicle and leave, but he declined to do so.[6]

The evidence also suggests that Ellis intentionally prolonged the traffic stop by debating at length with the Officers about the legality of impounding his vehicle and attempting to engage bystanders in the incident—apparently in his efforts to capture "creative content" for his videos.[7] For these reasons, Ellis has failed to establish a constitutional violation with respect to duration of the detention.

---

[5] *See* Compl. ¶ 103, Ex. A, https://www.youtube.com/watch?v=L5qCxaXkKEM (last visited Apr. 9, 2026); Ex. D, https://youtu.be/bWQSceHumuY (last visited Apr. 9, 2026).

[6] *See id.*, Ex. D.

[7] *See id.*, Ex. A; Ex. D.

c.    **The impoundment of Ellis's vehicle was not unconstitutional.**

As noted above, Ellis's vehicle had no plates or registration and therefore violated numerous Texas roadway laws. *See, e.g.*, *Roberts v. State*, 444 S.W.3d 770, 774–75 (Tex. App.—Fort Worth 2014, pet. ref'd) (noting that driving without driver's license, the proper registration of vehicles, and/or insurance are offenses under Texas Transportation Code); s*ee also Hernandez v. State*, No. 07-20-00061-CR, 2021 WL 865204, at *1 (Tex. App.—Amarillo Mar. 8, 2021, pet. ref'd) ("No one questions that it is a traffic offense to operate a motor vehicle with an expired registration on the public highways of Texas."); *Thrower v. State*, No. 2-03-121-CR, 2003 WL 22922988, at *2 (Tex. App.—Fort Worth Dec. 11, 2003, no pet.) ("It is a traffic violation in Texas to operate a motor vehicle on a public highway without current registration.").

Pursuant to Texas Transportation Code § 502.472, 'a person commits an offense if the person operates a motor vehicle that has not been registered[.]' Thus, the vehicle operated by [the driver] could not lawfully be driven away from the scene." *United States v. McKinnon*, 681 F.3d 203, 209 (5th Cir. 2012). In addition, the Officers were not required to leave the vehicle in a private parking lot as Ellis argues. (*See* Officers Resp. ¶¶ 15-19.) In *McKinnon*, the defendant argued that the impounding of his car without a suitable registration was improper under the Fourth Amendment because a licensed passenger could have driven the car instead. *Id*. The

Fifth Circuit, however, upheld the officer's decision to impound the car rather than let it go because it was not legally permitted to be on the road. *Id*.; *see also United States v. Vernon*, 511 F. App'x 318, 322 (5th Cir. 2013) (upholding constitutionality of impounding car left in casino parking lot under the "community caretaking exception");[8] *Bey v. Hood*, No. 6:19-CV-00227-JDK, 2020 WL 3039147, at \*6 (E.D. Tex. Mar. 30, 2020), *adopted*, 2020 WL 3026292 (E.D. Tex. June 5, 2020), and *adopted sub nom. Bey v. Due*, 2020 WL 3035644 (E.D. Tex. June 5, 2020) (finding that because the vehicle was not lawfully registered, the officer's decision to have the vehicle towed falls within the community caretaking exception and was not unreasonable under the Fourth Amendment).

In sum, Ellis's vehicle was not roadworthy, and the Fourth Amendment permits the impoundment of such vehicles. *See Maricle v. Biggerstaff*, 10 F. Supp. 2d 705, 707–08 (N.D. Tex. 1998), *aff'd*, 168 F.3d 486 (5th Cir. 1999) (finding plaintiff failed to allege constitutional violation where police seized and towed his vehicle after he violated Texas Transportation Code).

---

[8] Under this exception, "[i]mpoundments by police officers may be done to further public safety or community caretaking functions, such as removing disabled or damaged vehicles, and automobiles which violate parking ordinances, and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic." *United States v. Haynes*, No. 3:17-CR-49-L, 2017 WL 3601386, at \*6 (N.D. Tex. Aug. 22, 2017) (citing *South Dakota v. Opperman*, 428 U.S. 364 (1976)) (cleaned up). As such, "[t]he authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *Id*.

**d.**   **Because Ellis's vehicle was properly impounded, the inventory search of the vehicle was not a constitutional violation.**

"When a vehicle is lawfully impounded, officers may conduct an inventory search of the car to protect the owner's property and protect police from potential hazards and liability over lost or stolen property." *United States v. Wesley*, 639 F. Supp. 3d 713, 717 (N.D. Tex. 2022); *see also United States v. Foots*, 340 F. App'x 969, 972 (5th Cir. 2009) (noting that inventory searches do not require a warrant because "they are not designed to uncover evidence of criminal activity and because they serve three caretaking purposes: to protect the owner's property while it is in police custody, to protect the police against claims of lost or stolen property, and to protect the police and the public from potential danger" (cleaned up)).

Officers may conduct an inventory search of an impounded car without violating "the Fourth Amendment if it is conducted pursuant to standardized regulations and procedures that are consistent with (1) protecting the property of the vehicle's owner, (2) protecting the police against claims or disputes over lost or stolen property, and (3) protecting the police from danger." *United States v. Williams*, No. 3:22-CR-413-B, 2025 WL 82449, at *4 (N.D. Tex. Jan. 13, 2025) (citing *United States v. Lage*, 183 F.3d 374, 380 (5th Cir. 1999); *see also McKinnon*, 681 F.3d at 209. The Fifth Circuit has also observed that "Dallas Police Department ('DPD') procedures require officers to inventory the contents of impounded vehicles." *See United States v. Shaw*, 578 F. App'x 363, 364 (5th Cir. 2014). Furthermore, this Court has recently

-24-

examined the DPD procedure permitting officers to conduct an inventory search of an impounded vehicle and found them constitutionally permissible. *See Williams*, 2025 WL 82449, at *4. Accordingly, there was no constitutional violation related to the inventory search of Ellis's vehicle prior to impoundment.

Based on the foregoing, Ellis's claims related to the traffic stop itself, the length of his detention and the impoundment of his vehicle fail because Ellis has not established a constitutional violation. Because Ellis has not demonstrated that a constitutional violation occurred, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201; *see also Pearson*, 555 U.S. at 236 (Courts have the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

> **2. Ellis has plausibly alleged that his constitutional rights were violated when he was frisked without reasonable suspicion.**

Ellis alleges that Officer Wellman ordered him from the car and "physically search[ed] and frisk[ed]" him "for weapons without reasonable suspicion or probable cause." (Compl.¶ 16.) Although Ellis's claims related to the traffic stop itself, the length of his detention and the impoundment of his vehicle fail for want of a constitutional violation, the undersigned concludes that Ellis has plausibly alleged that an investigatory frisk exceeded the permissible scope of the stop. *United States v. Dortch*, 199 F.3d 193, 198 (5th Cir. 1999).

The legality of a "stop and frisk" requires this analysis: were the officer's initial actions justified when they occurred, and was there a reasonable relation between subsequent actions and the circumstances that supported the stop? *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir.2004); *see also United States v. Vickers*, 540 F.3d 356, 362 (5th Cir. 2008) ("The question is whether the [Officers] diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant") (citing *United States v. Sharpe*, 470 U.S. 675, 686 (1985) (internal quotation marks omitted)). The means of investigation at issue here was a frisk, which the Supreme Court has held is appropriate when the officer fears that the suspect is armed and poses a danger to the officer or others. *Terry*, 392 U.S. at 24. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id*. at 27.

The Officers recite Ellis's allegation that he was "frisk[ed] without reasonable suspicion or probable cause" in the factual summary section of their motion, but the motion never mentions the allegation again. (*See generally* Officers Mot.) Other than making a cursory statement that "[a]ll claims fail to state a claim" (*id*. at 13), the Officers do not directly argue that Ellis failed to sufficiently plead this claim. And while the Officers' motion advances detailed arguments justifying the reasonableness

of Ellis' detention, the legality of the impoundment and tow of Ellis's vehicle, and the resulting inventory search before the vehicle was towed (*see* Officers Mot. at 9-14), the motion conspicuously lacks any additional facts or argument justifying the necessity for a frisk or suggesting that the circumstances of the stop warranted a belief that Ellis was armed and posed a danger to the Officers or others.

At the motion to dismiss stage, the Court need only consider whether Ellis alleged sufficient factual content, taken in the light most favorable to him, such that his unlawful frisk claim is facially plausible. *Iqbal*, 556 U.S.at 678. This does not change simply because the Officers assert a defense of qualified immunity. Lacking any reasonable suspicion justification whatsoever from the Officers, the undersigned concludes that Ellis has pled a facially plausible claim that he was frisked without reasonable suspicion. Thus, the Officers' motion to dismiss Ellis's unlawful frisk claim under Rule 12(b)(6) for failure to state a claim should be denied.

As for qualified immunity, the entirety of the Officers' argument consists of the following:

> Whatever rights Plaintiff is alleging the Officers violated, he must show that "the right was 'clearly established' at the time of the challenged conduct." None of the facts alleged and/or incorporated state any plausible claims because, even leaving aside that the Officers violated none of Plaintiff's rights, they did not violate any clearly-established rights. As such, at a bare minimum, they are entitled to qualified immunity.

(Officers Mot. at 15 (internal citations omitted).)  For the same reasons outlined above regarding the plausibility of Ellis's unlawful frisk claim, the Court finds that the first prong of the qualified immunity inquiry is satisfied—Ellis has plausibly alleged that the Officers' conduct violated a constitutional right because the circumstances of the stop did not automatically warrant a suspicion that Ellis was armed and posed a danger to the Officers or others.

The Court finds the second prong of the qualified immunity analysis, whether the constitutional right was clearly established at the time of the violation, is also met.  Although Ellis has the burden to point out the clearly established law, *see, e.g.*, *Clarkston*, 943 F.3d at 993, and generally attempted to do so here (*see* Officers Resp. at ¶¶ 11-13), the Court is not required to limit its analysis to the cases cited by Ellis. *Joseph v. Bartlett*, 981 F.3d 319, 338 (5th Cir. 2020).  "The Supreme Court has expressly rejected the idea that it is the plaintiff's burden to 'identify the universe of statutory or decisional law from which the [district] court can determine whether the right allegedly violated was clearly established.'"  *Santander v. Salazar*, 133 F.4th 471, 478 (5th Cir. 2025) (citing *Elder v. Holloway*, 510 U.S. 510, 514, (1994)). Furthermore, "[a] court engaging in review of a qualified immunity judgment should [ ] use its full knowledge of its own and other relevant precedents."  *Elder v. Holloway*, 510 U.S. 510, 516 (1994); *see also Ford v. Anderson Cnty.*, Tex., 102 F.4th 292, 309 n.8 (5th Cir. 2024); *Bailey v. Ramos*, 125 F.4th 667, 682 n.60 (5th Cir. 2025); *Green v.*

*Thomas*, 129 F.4th 877, 885 n.29 (5th Cir. 2025).  "At the Rule 12(b)(6) stage, the district court was only to assess whether [the] complaint alleged sufficient facts to defeat qualified immunity.  *Santander*, 133 F.4th at 478 (finding error where the district court scrutinized the plaintiffs' pleading for relevant legal authority "effectively requiring plaintiffs to brief legal authority in support of their claims within initial pleadings in anticipation of a qualified immunity defense").  With these guidelines in mind, the undersigned considers the clearly established at the time as it relates to reasonable suspicion to conduct a frisk during a traffic stop.

The Supreme Court held in *Terry* that "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," he can pat down that person for concealed weapons.  392 U.S. at 24.  Whether an officer does in fact have reasonable suspicion to frisk for weapons "is dependent upon both the content of information possessed by police and its degree of reliability."  *Navarette v. California*, 572 U.S. 393, 397 (2014) (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)).  The standard courts apply when making this determination "takes into account the totality of the circumstances—the whole picture."  *Id.* (internal citation and quotation marks omitted.  "[A] mere 'hunch' does not create reasonable suspicion."  *Id.* (quoting *Terry*, 392 U.S. at 27).  But "the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance

-29-

of the evidence,' and 'obviously less' than is necessary for probable cause." *Id.* (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

The Fifth Circuit has reasoned that "if the totality of the circumstances prior to the seizure of the defendant does not provide a particularized and objective basis for suspecting the particular person seized of criminal activity, the seizure violates the Fourth Amendment." *United States v. Monsivais*, 848 F.3d 353, 361–62 (5th Cir. 2017). Because "drawing a reasonable inference is a logical process of reasoning from known facts," an officer evaluating a person's behavior must have "some articulable premise—some fact linking that behavior to reasonably suspected criminality." *Id.* at 362 (citing *United States v. Arvizu*, 534 U.S. 266, 273, (2002); *Terry*, 392 U.S. at 21–22). "Without that premise, there can be no objectively logical reason to impute criminality to a lawful range of behavior." *Id.* As previously explained, the Officers here failed to provide any articulable basis justifying a frisk during a routine stop.

Based on the foregoing, the undersigned finds that the law directly applicable to reasonable suspicion to conduct a frisk during a traffic stop was clearly established in the Supreme Court and the Fifth Circuit well in advance of the traffic stop at issue here. *See, e.g.*, *Rodriguez*, 575 U.S. at 354–55; *Anderson*, 483 U.S. 635, 640–41, *Terry*, 392 U.S. at 27; *Monsivais*, 848 F.3d at 357–63; *Pack*, 612 F.3d at 350. Therefore, Ellis sufficiently alleged facts which overcome the Officers' qualified immunity defense as

to Ellis's unlawful frisk claim at the dismissal stage.  Therefore, the motion to dismiss this claim should be denied.

### 3.    Ellis has not plausibly alleged a due process violation.

Ellis alleges that the Officers violated his substantive due process rights by "unwarranted state interference in Plaintiff's creative content relationship with his friends that resides [sic] in Dallas," and his "friendship is now damaged beyond repair due to [his] failure to appear at scheduled event."  (Compl. ¶¶ 66-75.) Because Ellis cites no statute, case law. or any other legal authority that provides for a due process cause of action on this basis, his claim fails on its face.

### 4.    Ellis's remaining federal claims against the Officers are meritless.

To the extent Ellis attempts to assert *Monell*-type claims against the Officers for failure to train and supervise (*id*. ¶¶ 76-91), Ellis does not allege that the Officers are policymakers or supervisors under any of the circumstances recognized by the Fifth Circuit for *Monell* liability, nor does he plausibly allege that the Officers were somehow responsible for implementing policies for the City's police department.  *See Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (holding that under § 1983, officials are not vicariously liable for conduct of those under their supervision, they are accountable for their own acts and for implementing unconstitutional policies that result in constitutional deprivations).  Furthermore, these claims are duplicative of his claims against the City, which is impermissible.

*See Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (affirming dismissal of official-capacity claims against individual defendants where such claims "duplicate[d] claims against the respective governmental entities themselves"). Accordingly, Ellis's purported *Monell* claims against the Officers fail.

Ellis also essentially repleads his § 1983 claim for unlawful detention against the Officers but incorporates a claim under Texas Penal Code Section 20.02.  (*See* Compl. ¶¶ 92-97.)  As an initial matter, Ellis's improper detainment claim is duplicative of his other constitutional claims, and as explained above, the undersigned has already determined that no constitutional violation occurred as to his detention.  In any event, Ellis cannot assert violations of the Texas Penal Code as a claim for civil liability.  *See Amaru v. Rhome Police Dep't*, No. 4:22-CV-01090-O-BP, 2024 WL 4008789, at *16 (N.D. Tex. Aug. 1, 2024), *adopted*, 2024 WL 4009951 (N.D. Tex. Aug. 30, 2024) (citing *Pinedo v. City of Dall., Tex.*, No. 3:14–CV–0958–D, 2015 WL 221085, at *9 n.3 (N.D. Tex. Jan. 15, 2015).).  Therefore, Ellis's remaining federal claims against the Officers should be dismissed for failure to state a claim.

## B.    Ellis's § 1983 Claims Against the City

Ellis also seeks to hold the City liable under 42 U.S.C. § 1983.  To state a § 1983 claim against the City, the complaint must allege sufficient facts to permit the reasonable inference that a constitutional violation occurred, and an "official policy" attributable to the City "was the moving force" behind it.  *Littell*, 894 F.3d at 622–23;

*Peña*, 879 F.3d at 621; *Groden v. City of Dallas*, 826 F.3d 280, 283–85 (5th Cir. 2016);

*see also Sanchez*, 956 F.3d at 791 (5th Cir. 2020) (citing *Monell*, 436 U.S. at 694);

*Hutcheson*, 994 F.3d at 483 (5th Cir. 2021) (rejecting the argument that a district court

errs by dismissing a *Monell* claim without first analyzing the underlying

constitutional violation).  Even though the undersigned has determined that Ellis

plausibly alleged a constitutional violation against the Officers upon which the City's

municipal liability *could* be based (*i.e.*, that he was frisked without reasonable

suspicion), his claims against the City nevertheless fail on independent grounds

because Ellis has not shown an unconstitutional policy attributable to the City or that

such a policy was the moving force behind the alleged violation.

Ellis's complaint alleges a myriad of *Monell* theories, including failure to train

and supervise, failure to discipline, and "failure to adequately assess the need to

detain Plaintiff" (Compl. ¶¶ 77-91, 98-101), but whether claims are framed as failures

to train, supervise, or discipline, they are all analyzed the same.  *Jean v. City of Dallas*,

No. 3:18-CV-2862-M, 2019 WL 7195308, at *5 n.6 (N.D. Tex. Aug. 12, 2019),

*adopted*, 2019 WL 7187104 (N.D. Tex. Dec. 23, 2019) ("Although Plaintiffs

separately assert claims for failure to train and failure to supervise or discipline, the

elements required to prove a claim under either theory are the same.").  Ellis also

asserts that the "Uninsured Motorist Ordinance Section 28-4 of the Dallas City Code

is the official written policy that caused the violation" and further asserts that the

Code "conflicts with the Texas Transportation code and the US Constitution." (Compl. ¶¶ 41-43.)

### 1. Ellis's facial challenge to the City ordinance allowing DPD officers to tow an uninsured vehicle is meritless.

Ellis asserts that the "Uninsured Motorist Ordinance Section 28-4 of the Dallas City Code is the official written policy that caused the violation." (Compl. ¶ 40.) This provision permits DPD officers to tow a vehicle when "the vehicle's owner or operator fails to show evidence of financial responsibility as required under Chapter 601 of the Texas Transportation Code." *Id.* (citing Dallas, Tex, Code § 28-4(a)(12)). Ellis asserts that this provision is "a problematic policy that conflicts with the Texas Transportation code and the US Constitution," but it is unclear from the complaint exactly how Ellis contends this provision conflicts with the Texas Transportation Code or the Fourth Amendment. (*Id.* ¶ 43).

Ellis is correct that § 28-4(a)(12) permits DPD officers to seize a vehicle, but he alleges no facts that plausibly show the ordinance violates or conflicts with any specific provision within the Texas Transportation Code, and he cites no provision within the state laws that forbids a municipality from towing vehicles that violate state law. Ellis also argues that the ordinance violates the Fourth and Fourteenth amendments because a tow is a seizure that is conducted with a warrant or hearing. (*See* Compl. ¶¶ 46-47.) But as explained above, Ellis's vehicle was not roadworthy, and the Fourth Amendment permits the impoundment of vehicles in such

-34-

circumstances.  *See Maricle*, 10 F. Supp. at 707–08; *McKinnon*, 681 F.3d at 208-09; *Vernon*, 511 F. App'x at 322; *Bey*, 2020 WL 3039147, at *6.

And to the extent Ellis alleges that the City is liable because it failed to properly train the Officers regarding the towing policy, the Fifth Circuit has explained that an attack on an official policy merely because it permits an officer to use his or her discretion (as the City's code does here) is a *Monell* claim predicated on a respondeat superior liability which "cannot be squared with the limitations that § 1983 places on the scope of municipal liability."  *Verastique v. City of Dallas*, 106 F.4th 427, 434–36 (5th Cir. 2024), *cert. denied*, No. 24-398, 2024 WL 5011727 (U.S. Dec. 9, 2024).  Thus, the policy is not unconstitutional simply because it permits an officer to use his or her discretion, and Ellis does not plausibly allege that the policy compels or permits unconstitutional actions.  Accordingly, Ellis's facial challenge to Dallas City Code § 28-4 fails, and his claims on this basis should be dismissed.

### 2. Ellis failed to sufficiently plead a claim for municipal liability under *Monell*.

As previously noted, Ellis's *Monell* causes of action are primarily based on failure-to-train or failure-to-discipline theories of liability.  (*See* Compl. ¶¶ 77-91.)  For a failure-to-train or a failure-to-discipline claim to survive a Rule 12(b)(6) motion, a plaintiff must sufficiently plead "that (1) the city failed to train or [discipline] the officers involved; (2) there is a causal connection between the alleged failure to [discipline] or train and the alleged violation of the plaintiff's rights; and

(3) the failure to train or [discipline] constituted deliberate indifference to the plaintiff's constitutional rights." *Id.* (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018)). "A pattern of similar constitutional violations by untrained [or undisciplined] employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train [or discipline]." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)). Ellis fails to plausibly allege all three elements of his *Monell* claims.

### a.     The allegations in Ellis's complaint do not provide facts to support an inference of unconstitutional policies by the City.

As an initial matter, Ellis's allegations in support of the City's liability, which are limited to reciting labels of *Monell* liability theories (*see* Compl. ¶ 77), fall well short of the specific facts that a complaint must contain to allow a claim against a municipality to proceed beyond the pleading stage. *See Peña*, 879 F.3d at 622; *Pinedo*, 2015 WL 5021393, at *5; *see also Zinter v. Salvaggio*, 610 F. Supp. 3d 919, 961 (W.D. Tex. 2022). In the *Monell* context, as elsewhere, courts do not "presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement." *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) (cleaned up); *Twombly*, 550 U.S. at 555 (Mere "labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action"

are insufficient to state a claim upon which relief may be granted.).  Yet, Ellis's complaint is rife with boilerplate recitations of the elements of a *Monell* claim and conclusory assertions regarding the City's policies.

For example, Ellis alleges: "[the City] knowingly maintained, enforced and applied an official recognized custom, policy, and practice of [e]mploying and retaining as police officers and other personnel, . . . [it] knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written CITY Police Department policies" and "fail[ed] adequately train officers, including JONATHAN WELLMAN, DALTON HARVEY AND OFFICER JOHN DOE, and fail[ed] to institute appropriate policies, regarding the use of towing and storage."  (Compl. ¶ 77.)  Such boilerplate allegations, unadorned with allegations of specific incidents or written policies that could plausibly amount to deprivations of constitutional rights, are "completely barren of factual support and wholly conclusory."  *Johnson v. Harris County*, 83 F.4th 941, 947 (5th Cir. 2023).  As such, they do not state a plausible *Monell* claim.  *See id*. (rejecting as "conclusory and formulaic" complaint's allegations that "officers have a history of arresting individuals for conduct that is not criminal in nature," which supervisor "allowed to continue." (cleaned up)).

### b. Ellis does not plausibly allege that a pattern or practice exists of City employees committing similar acts.

A plaintiff must show that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Pena*, 879 F.3d at 621 (citations omitted). For purposes of the first element, an official policy "includes the decisions of a government's law-makers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id*. at 621–22 (citations omitted). To plausibly plead that a practice is "so persistent and widespread as to practically have the force of law, a plaintiff must do more than describe the incident that gave rise to his injury." *Id*. at 622 (citations and internal quotation marks omitted).

Ellis does not cite a pattern of unconstitutional actions. Instead, he vaguely asserts that the City maintains unconstitutional policies related to training and discipline. (Compl. ¶¶ 76-91.) It is not enough to vaguely allege that a governmental agency has a history of various problems. Instead, "those specific facts must be similar to the case at hand, prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Johnson*, 83 F.4th at 946–47. A pattern of similar prior incidents "requires similarity and specificity; '[p]rior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question.'" *Fuentes v. Nueces Cty.,*

*Tex.*, 689 F. App'x 775, 778 (5th Cir. 2017) (quoting *Peterson*, 588 F.3d at 851 (alteration in original)).

"In addition to similarity and specificity, a pattern must be comprised of 'sufficiently numerous prior incidents' rather than merely isolated instances.'" *Id.* (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)); *see Peterson*, 588 F.3d at 851 (noting that 27 incidents of excessive force over a period of four years did not "reflect a pattern that can be said to represent official policy of condoning excessive force so as to hold the city liable for the acts of its employees' unconstitutional conduct"); *Pineda*, 291 F.3d at 329 (holding that 11 incidents of warrantless entry did not support a pattern of unconstitutional warrantless entry); *Moreno v. City of Dallas*, No. 3:13-CV-4106-B, 2015 WL 3890467, at *8-9 (N.D. Tex. June 18, 2015) (allegations of eight prior incidents in which police officers used excessive force were not sufficient to indicate a pattern); *see also Monacelli v. City of Dallas*, No. 3:21-CV-02649-L (BT), 2023 WL 6563410, at *9 (N.D. Tex. Sept. 1, 2023) (explaining that alleging only two prior instances of similar constitutional violations failed to plausibly state a claim for failure to discipline or failure to train), *adopted*, 2023 WL 6370753 (N.D. Tex. Sept. 29, 2023); *Jean*, 2019 WL 7195308, at *6 (alleging three specific instances where officers were not disciplined for similar misconduct was insufficient). Here, Ellis's complaint does not even come close to

including the level of detail included that the Fifth Circuit and other courts have rejected as insufficient.

Based on the allegations in Ellis's complaint, he has failed to plausibly show a pattern of similar constitutional violations that reveals the City's failure to train was the result of deliberate indifference.

### c.  Ellis failed to state a claim under the ratification theory of liability.

Ellis asserts, without any factual enhancement, that the City "ratified" the conduct of the Officers.  (*See, e.g.*, Compl. ¶¶ 79-80.)  Ellis's allegation fails to meet the Fifth Circuit's high standards for pleading ratification.

Ratification "provides another way of holding a city liable under § 1983." *Allen v. Hays*, 65 F.4th 736, 749 (5th Cir. 2023).  "[R]atification can suffice for *Monell* liability only if the authorized policymakers approve a subordinate's decision and the basis for it."  *Id.* at 749 n.10 (internal quotation marks and citation omitted).  But while Ellis claims that the Officers were not adequately disciplined (*see* Compl. ¶ 79), "ratification requires the approval of a policy maker, not their mere acquiescence." *Benfer v. City of Baytown*, 120 F.4th 1272, 1287 (5th Cir. 2024) (dismissing ratification claims where plaintiff alleged city was liable for failing to discipline officer).  Ellis pleads no facts that any City policymaker specifically approved of the actions that allegedly caused him harm.

The Fifth Circuit "has limited the theory of ratification to 'extreme factual situations,'" *Peterson*, 588 F.3d at 848 ((citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)), such as officers' killing of an innocent occupant of a truck or their shooting of a fleeing suspect in the back, *see id*. (citations omitted)); *accord Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017) ("Ratification . . . is limited to 'extreme factual situations.'" (quoting *World Wide Street Preachers Fellowship v. Twn. of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009) (quoting, in turn, *Peterson*, 588 F.3d at 848))); *see also Davidson*, 848 F.3d at 395-96 ("Here, the underlying conduct [ ], while unconstitutional, was not sufficiently extreme to qualify for a finding of ratification." (citing *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985))).

General allegations of policymaker indifference to, or even defense of, alleged bad acts do not meet this standard. *See, e.g.*, *Medina v. Ortiz*, 623 F. App'x 695, 701 (5th Cir. 2015) (no ratification where the sheriff accepted an officer's use-of-force report, refused to turn over evidence until a lawsuit was filed, and defended the deputies' actions in the case). Despite Ellis's accusation that the Officers' conduct was "outrageous," the undersigned does not find that this case presents an extreme factual situation. Accordingly, Ellis has failed to state a claim under the ratification theory of liability.

### d.   Ellis does not plausibly allege that any City policies were the "moving force" behind his injuries.

Even if Ellis plausibly alleged that a constitutional violation caused his injury *and* plausibly alleged the existence of a City policy or pattern demonstrating deliberate indifference, his allegations still fall short of constituting "moving force" under § 1983.  To show "moving force causation," a plaintiff must demonstrate a "direct causal link" between the municipality's policy and the deprivation of the plaintiff's federal rights.  *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (citing *Bryan Cnty. v. Brown*, 520 U.S. at 404).   "[T]he connection must be more than a mere 'but for' coupling between cause and effect.  The deficiency in training, hiring, or supervision must be the actual cause of the constitutional violation." *Thompson v. Connick*, 578 F.3d 293, 300 (5th Cir. 2009) (cleaned up), *rev'd on other grounds*, 563 U.S. 51 (2011).

Thus, to adequately allege causation at the pleading stage, Ellis's pleadings must be able to plausibly answer: "Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?" *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989).  Ellis's complaint does not allege any facts that can provide an affirmative answer to that question. Instead, Ellis's complaint repeatedly alleges that the City failed to provide adequate training regarding its allegedly unconstitutional towing policy (*see, e.g.*, Compl. ¶¶ 77-78), but as extensively explained above, the policy itself (Dallas City Code § 28-4) is

not facially unconstitutional, the City cannot be found liable under *Monell* merely because the policy committed towing decisions to on-the-scene officers, and the Fourth Amendment permits the impoundment of vehicles—such as Ellis's vehicle in this case—that violate state law.

Furthermore, even an obvious need for additional training "may not be enough to establish deliberate indifference because it does not necessarily mean that the officers will so obviously make wrong decisions that failing to train them amounts to a decision by the city itself to violate the Constitution." *Barrios-Barrios v. Clipps*, 825 F. Supp. 2d 730, 746-47 (E.D. La. 2011) (citing *Connick*, 563 U.S. at 70) (quotation marks omitted). As the Fifth Circuit has held, "absent specific allegations supporting a plausible causation inference, this legal conclusion does not state a claim for relief and warrants dismissal under Rule 12(b)(6)." *Ratliff*, 948 F.3d at 285.

Because Ellis does not plausibly plead that a failure to train or supervise the Officers was the moving force in causing his constitutional injury; and he does not allege, other than in conclusory terms, that any policymaker acted with deliberate indifference to the allegedly inadequate training or supervision of DPD officers, his municipal liability claim fails for lack of causation. Accordingly, the undersigned concludes that Ellis's § 1983 claims against the City should be dismissed in their entirety for failure to state a claim.

**C.     Ellis's State Law Claims Against All Defendants**

Ellis also makes a state law claim against the Officers and the City under the Texas Civil Practices and Remedies Code section 101.021.  (*See* Compl. ¶¶ 98-101.) This provision, generally referred to as the Texas Torts Claims Act, states as follows:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code § 101.021.

Ellis does not plausibly allege that the Officers' operation of a motor-driven vehicle caused harm to his person or property in any cognizable manner; nor does he claim that an Officer's vehicle struck him or his car.  Therefore, any claims under section 101.021(1) fail.  Ellis also does not plausbly allege injuries arising from a condition or use of tangible personal or real property—such as a slip-and-fall or other recognized use under Texas law—so his claims do not fall within section 101.021(2).

Even viewed most liberally in Ellis's favor, the only allegation that possibly touches on 101.021 is his vague allegation that he suffered because of "the negligent

-44-

tactics and handling of the situation with Plaintiff, including pre-tow negligence."

(*See* Compl. ¶ 99(c).)   But even this claim is unclear as to how such "negligence" fits within the Torts Claims Act.   Accordingly, Ellis has failed to state a claim, and his section 101.021 claims must be dismissed.

## IV.  RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that the City's motion to dismiss (Dkt. No. 44) be **GRANTED**, and Ellis's claims against the City should be **DISMISSED WITH PREJUDICE**.

The undersigned **FURTHER RECOMMENDS** that the Officers' motion to dismiss (Dkt. No. 29) should be **GRANTED** in part and **DENIED** in part.

- Specifically, the motion should be **GRANTED** as to Ellis's claims against the Officers related to the traffic stop, the length of his detention and the impoundment of his vehicle, and those claims should be **DISMISSED WITH PREJUDICE**.

- As to Ellis's claim that he was frisked during the stop without reasonable suspicion, however, the Officers' motion should be **DENIED** as Ellis has plausibly alleged a constitutional violation, and this claim should proceed.

**SO RECOMMENDED** on April 21, 2026.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE OF RIGHT TO OBJECT</u>

A copy of these findings, conclusions, and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

-46-